**AMERICAN SAMOA GOVERNMENT, Plaintiff**

**v.**

**TOLO aka ALBERT BERNARD, Defendant**

High Court of American Samoa
Trial Division

CR No. 54-93

May 9, 1994

Before KRUSE, Chief Justice, TAUANU`U, Chief Associate Judge, and LOGOAI, Associate Judge.

Counsel: For Plaintiff, Rosemary H. Kaholokula, Assistant Attorney General
For Defendant, Barry I. Rose, Assistant Public Defender

Order on Motion to Suppress Identification:

The defendant was identified by the complainant and her husband following a showup--an identification process where only one person is shown to the eyewitness. Defendant contends that his pre-charge identification by the complainant and her husband was undertaken in overly suggestive circumstances, and that any subsequent attempts at in-court identification by these two individuals would therefore be in violation of his rights to due process.

Contrary to proper police procedure, the complainant and her husband were taken by Officers King Talamoni and Afimuao Leota to the Tafuna Correctional Facility (TCF) for the purpose of their viewing the defendant, an inmate at the TCF. The complainant, while sitting with her husband and Officer Leota in a police vehicle outside one of the TCF cell-blocks,

identified the defendant as she observed him exiting the cell-block to cross the yard. Her husband then similarly identified the defendant as the culprit.

 A one-on-one showup is inherently suggestive; however, suggestiveness of the identification process does not, by itself, merit suppression. *United States v. Hamlin*, 684 F2d 380 (6th Cir. 1982). In *Manson v. Braithwaite*, 432 U.S. 98 (1977), the Supreme Court elaborated on the standards to be used in determining the admissibility of identification testimony. The Court put the focus of inquiry on reliability of the identification and applied the "totality of the circumstances" standard of *Stoval v. Denno*, 388 U.S. 393 (1967), to test reliability. In this regard, the factors to be considered are:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation.

*Manson,* 432 U.S. at 114.

With regard to the complainant's identification, the evidence suggests that she had the opportunity to view the defendant. She testified that she struggled in the bedroom with the intruder while he attempted to hold her down with one hand on her neck and threatened a stabbing motion with the other. Although the incident happened during the hours of darkness, the complainant testified that there was sufficient light from a nearby streetlight to enable her to see the person she was struggling with that morning. While the opportunity to identify her assailant may well have been momentary and at a time of heightened anxiety, these are factors that go to weight rather than admissibility.

Additionally, the fact that the complainant implored the officers to take her to the TCF that very morning, corroborates her claim of an opportunity for positive identification. She lives near the TCF. She was determined in her request to the officers to be taken immediately to the TCF because she realized that she had seen the intruder's face before; she was certain in her own mind that the intruder was an inmate whom she had seen around the prison area.

Her recollection of having seen the intruder before also bespeaks her degree of attention. Furthermore, she had the presence of mind to race

57

after the intruder to the front door, after the latter had bolted from the bedroom, so that she could turn on the outside light. At the same time, the description of the intruder which she and her husband had given to the police, together with certain telltale evidence of a peculiar, but well known, modus operandi, caused at least one of the officers to suspect the defendant and relent to complainant's insistence to be taken to the TCF. At the TCF, complainant's level of certainty was demonstrated by her immediate and excited identification of the defendant. Finally, the prompt confrontation with defendant actually enhanced reliability.

Notwithstanding the suggestiveness of the procedure employed, we are satisfied that the complainant's identification of the defendant had an independently reliable origin.

As to her husband's identification of the defendant, we conclude that his identification of the defendant cannot be sustained. The complainant's husband did not have the opportunity to positively identify the defendant. The best that he had in the way of opportunity was a fleeting side-view of the intruder, although in his ensuing chase with the intruder, he was able to observe the latter's size, hair length, complexion, and clothing. In actuality, all that this witness can really attest to is that the defendant "resembled" the person he was chasing that morning.[1]

His identification of the defendant at the TCF was, we believe, based upon his wife's sense of assuredness that she had seen the intruder as the defendant walked out of the cell-block. We are affirmed in this conclusion by this witness's demonstrated inability to recognize the defendant at the preliminary examination stage. At the same time, his ineffective attempts on the stand to reconcile certain inconsistencies with his earlier testimony at the preliminary examination clearly pointed to his inability to sort out what it was that he had seen, and what it was that he had deduced.

We conclude that any in-court attempts at positive identification of the defendant by this witness would be improperly tainted by his pre-trial identification of the defendant at the TCF.

On the foregoing, the motion to suppress identification by the complainant is DENIED. The motion to suppress identification by the complainant's husband is GRANTED.

---

[1] Although falling short of positive identification, such testimony is admissible. 29 Am. Jur.2d, *Evidence* § 267.

It is so ordered.